UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

PATRICK DEJEAN,

                Plaintiff,                CV-06-6317 (SJF)(AKT)

      -against-

                                         **OPINION & ORDER**

COUNTY OF NASSAU, KATHLEEN RICE,
District Attorney, individually and in her official
capacity, STEVEN L. SCHWARTZ, Assistant
District Attorney, individually and in his official
capacity, GREGORY HECHT, Associate Court Clerk
of the District Court of Nassau County, individually
and in his official capacity,

                Defendants.
----------------------------------------------------------X

FEUERSTEIN, J.

On November 20, 2006, *pro se* plaintiff Patrick DeJean (plaintiff) commenced this action against the County of Nassau (the County), Kathleen Rice (Rice), the Nassau County District Attorney, Steven L. Schwartz (Schwartz), Assistant District Attorney (collectively, the County defendants), and Gregory Hecht (Hecht), Associate Court Clerk of the District Court of Nassau County[1], all in their individual and official capacities, alleging violations of 18 U.S.C. §1983. The County defendants now move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. Plaintiff has not opposed the motion. For the reasons stated herein, the County defendants' motion is granted.

---

[1] By order dated October 25, 2007, I granted Hecht's motion for judgment on the pleadings and dismissed the complaint as against him.

1

I.  Background

   A.  Factual Background[2]

Plaintiff alleges that on September 25, 2005, he was arrested by Detective Fredrick Penna (Penna) of the Nassau County Police Department (NCPD), "and charged with leaving the scene of a fatal accident which allegations and charges wer [sic] untrue." (Complaint [Compl.], ¶ 5).

Plaintiff alleges that on August 24, 2006[3], he attempted to file criminal charges against Penna for perjury, official misconduct, tampering with public records, and offering a false instrument for filing with the Nassau County District Court (the District Court) relating to Penna's filing of criminal complaints against plaintiff allegedly containing false statements. (Compl., ¶ 6). According to plaintiff, he mailed four (4) misdemeanor complaints to the District Court for filing. (Id.).

Plaintiff alleges that on October 4, 2006, Hecht returned his misdemeanor complaints and informed him that the District Attorney's Office, and, specifically, defendant Schwartz, had informed him that they had declined to prosecute plaintiff's misdemeanor complaints pursuant to N.Y. C.P.L. § 160.50(3)(i). (Compl., ¶ 7).

   B.  Procedural History

On November 20, 2006, plaintiff commenced this civil rights action against the County

---

[2] As is required on a motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this court.

[3] Although the complaint sets forth the date as August 24, *2005*, that date is clearly incorrect.

defendants and Hecht[4] pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, that the County defendants violated his First and Fourteenth Amendment rights to access to the courts and equal protection of the law (1) by interfering with his right to file misdemeanor complaints and commence a criminal proceeding (second cause of action); (2) by having a "policy, custom and practice which shield police officers, who commit perjury and other criminal acts during arrest and filing of criminal complaints, from criminal liability against criminal complaints filed by plaintiff * * *," (third and fifth causes of action); and (3) by screening plaintiff's misdemeanor complaints and "circumvent[ing] them from being filed with the District Court pursuant to defendants' [aforementioned] policy, custom and practice," (fourth cause of action).

The County defendants now move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

II.  Discussion

    A.  Standard of Review

In deciding a Rule 12(c) motion, the same standard as that applicable to a motion under Rule 12(b)(6) is applied. See Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2006). A motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when a plaintiff pleads sufficient facts "to state a claim for relief that is plausible on its face." In Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the

---

[4] At all relevant times, Hecht was an Associate Court Clerk, and, thus, was an employee of the State of New York.

defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, ___ U.S. ___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). A "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic, 127 S.Ct. at 1959. Accordingly, the applicable standard on a motion to dismiss pursuant to Rule 12(b)(6) requires, at least, allegations "plausibly suggesting (not merely consistent with)," liability. Williams v. Berkshire Financial Group, Inc., 491 F.Supp.2d 320, 324 (E.D.N.Y. 2007).

In determining a motion pursuant to Rule 12(c), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. See, Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir. 2003); see also Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007). Moreover, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 [2d Cir. 1994]). Nonetheless, a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. Traguth v. Zuck, 710 F.2d 90, 92 (2d Cir. 1983).

B.  42 U.S.C. § 1983 Claims[5]

---

[5] 42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

4

1. Municipal Liability (Monell Claims)

The County defendants contend that plaintiff cannot establish municipal liability against the County based on his assertion that the District Attorney's Office has a custom, policy and/or practice which precludes consideration of criminal charges brought by an accused against police officers, and insulates from investigation and criminal liability police officers who allegedly commit perjury and other criminal acts when a pretrial detainee brings charges against them.

A municipality or municipal entity cannot be held liable under § 1983 on a *respondeat superior* theory. See, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Linder v. City of New York, 263 F.Supp.2d 585, 591 (E.D.N.Y. 2003). A municipal entity may only be held liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] * * * [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." Monell, 436 U.S. at 690, 98 S.Ct. 2018. The plaintiff must show a "direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread

---

or other proper proceeding for redress* * *."

that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. Moray v. City of Yonkers, 924 F.Supp. 8, 12 (S.D.N.Y. 1996); see also Davis v. Lynbrook Police Dept., 224 F.Supp.2d 463, 478 (E.D.N.Y. 2002). Monell claims are not subject to a heightened pleading standard and need only comply with the notice pleading requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure, i.e. that it include "a short and plain statement of the claim showing that the pleader is entitled to relief." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Plaintiff does not allege the existence of a formal policy officially endorsed by the County or that the County took any direct action with respect to the conduct alleged in the complaint. Thus, municipal liability, if any, must be based on the specific actions of an official with final policymaking authority. See Barrett v. Orange County Human Rights Commission, 194 F.3d 341, 350 (2d Cir. 1999). In this respect, the County can only be held liable for the actions of its own policymakers. See Myers v. County of Orange, 157 F.3d 66, 76 (2d Cir. 1998).

      a.     Liability based upon Rice's Conduct

To the extent plaintiff's Monell claims are based on allegations that Rice, as an official with final decision-making authority, was implicated in the decision not to bring charges against Penna, those claims are insufficient to establish municipal liability against the County. Under New York law, district attorneys and assistant district attorneys are generally presumed to be

local county officers, not state officers. See N.Y. Pub. Off. Law § 2; N.Y. County Law § 53(1); Myers, 157 F.3d at 76. However, a narrow exception exists to this general rule, which provides that when a district attorney makes a determination to prosecute or not to prosecute a criminal matter, he or she acts in a quasi-judicial capacity and represents the State, not the County. See Baez v. Hennessy, 853 F.2d 73 (2d Cir. 1988); see also Myers, 157 F.3d at 76; Ying Jing Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993). Thus, the County cannot be held liable for the actions of Rice, if any, in the decision not to prosecute Penna.

However, to the extent plaintiff's Monell claims are based on the administration of the district attorney's office, the district attorney is treated not as a state official, but rather as an official of the municipality to which he or she is assigned. Gan, 996 F.2d at 536; Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992). Thus, to the extent plaintiff's complaint alleges that the district attorney's office had a policy of suborning perjury, ignoring evidence of police misconduct and sanctioning and concealing police misconduct or wrongdoing, Rice may be considered a county policymaker for whose actions the county may be held liable. See, e.g. Myers, 157 F.3d at 77 (finding that where a district attorney implements an unconstitutional policy directing a police department and assistant district attorneys not to entertain cross-complaints, that policy is imputed to the county); Gentile v. County of Suffolk, 926 F.2d 142, 152 n. 5 (2d Cir. 1991) (holding that a municipality could be held liable upon the county's long history of negligent disciplinary practices regarding law enforcement personnel, which gave rise to the individual defendants' conduct in promoting the malicious prosecution of plaintiffs).

b. Liability based Upon Schwartz's Conduct

Municipal liability may not be based solely on the misconduct of non-supervisory employees. See Monell, 436 U.S. at 691, 98 S.Ct. 2018. "[O]nly actions by officials relatively high up in the municipal hierarchy will produce municipal liability." Walker, 974 F.2d at 297. 1992). Whether an official has final policymaking authority is a question of law for the court. See Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). "An official has final [policymaking] authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003).

Plaintiff has not alleged that Schwartz, as opposed to Rice, had any policymaking role in the district attorney's office, or that the actions he took in declining to prosecute plaintiff's misdemeanor complaints were undertaken in any supervisory capacity. Accordingly, Schwartz's alleged actions cannot be said to represent the actions of a policymaker responsible for the alleged policy that caused plaintiff's constitutional deprivation. See, e.g. Feerick v. Sudolnik, 816 F.Supp. 879, 886-887 (S.D.N.Y. 1993), aff'd, 2 F.3d 403 (2d Cir. 1993) (dismissing the plaintiff's claims against the assistant district attorneys on the basis that they were not municipal policymakers); Peterson v. Tomaselli, 469 F.Supp.2d 146, 169-170 (S.D.N.Y. 2007) (granting summary judgment as to the plaintiff's claims of municipal liability based on the actions of the assistant district attorney). Therefore, to the extent plaintiff's claims of municipal liability are based on the actions of Schwartz, those claims are dismissed.

2. Official Capacity Claims

   a. Eleventh Amendment

To the extent plaintiff's claims against Rice in her official capacity are based on allegations that she was implicated in the decision not to prosecute Penna, those claims are barred by the Eleventh Amendment. The Eleventh Amendment of the United States Constitution bars suits for damages in a federal court by private parties against a state or one of its agencies, absent consent to suit or an express statutory waiver of immunity. Board of Trustees of University of Alabama v. Garrett, 531 U.S. 356, 362, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Moreover, a suit against a state official in his or her official capacity is not a suit against the official personally, but rather is a suit against the official's office and, thus, is no different from a suit against the State itself. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Since the State of New York has not consented to suit in federal court, see, e.g. Le Grand v. Evan, 702 F.2d 415, 417 (2d Cir. 1983) (holding that by virtue of the Eleventh Amendment, the State of New York is immune from a suit for damages under section 1983), plaintiff's claims against Rice in her official capacity are barred by the Eleventh Amendment. See, e.g. Gan, 996 F.2d at 536 (holding that to the extent the complaint alleged that the District Attorney was implicated in the decision not to bring criminal charges, he was properly deemed to be an official of New York State and was entitled to invoke Eleventh Amendment immunity).

b.  Remaining Official Capacity Claims

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 691, 98 S.Ct. 2018. "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" Escobar v. City of New York, No. 1:05-cv-3030, 2007 WL 1827414, at * 3 (E.D.N.Y. June 25, 2007) (citing cases). Since the County is named in the complaint, the claims against Rice and Schwartz, in their official capacities, are dismissed as duplicative and redundant. See, e.g. Drees v. County of Suffolk, No. 06-CV-3298, 2007 WL 1875623, at * 19 (E.D.N.Y. June 27, 2007) (dismissing the claims against the individual defendants in their official capacities as duplicative of the Monell claim against the County); Olson v. State of New York, No. 04-CV-0419, 2005 WL 5885368, at * 2 (E.D.N.Y. Mar. 9, 2005).

3.  Immunity

Prosecutors enjoy absolute immunity from liability under Section 1983 in suits seeking damages for acts carried out in their prosecutorial capacities. Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001); Dory v. Ryan, 25 F.3d 81 (2d Cir. 1994), including the decision to withhold or commence a prosecution. See Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) (holding that the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction); Pinaud v. County of Suffolk, 52 F.3d 1139,

1148 (2d Cir. 1995) ("absolute immunity extends to those acts, whether in or out of the courtroom, 'which occur in the course of the [prosecutor's] role as an advocate for the State'") (internal citation omitted). Once absolute immunity attaches, it "attaches to [the prosecutor's] function, not the manner in which he performed it. * * * Accordingly, a prosecutor's motivation, and whether preferable alternatives to the actions taken were available, are irrelevant." Parkinson, 238 F.3d at 150 (internal quotations and citations omitted); see also Shmueli, 424 F.3d at 237 (holding that once the court determines that the challenged prosecution was not clearly beyond the prosecutor's jurisdiction, the prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive). To the extent plaintiff's claims against Rice and Schwartz relate to the performance of tasks undertaken by them as advocates of the State, they were not undertaken in a complete absence of all jurisdiction and, thus, Rice and Schwartz are immune from suit.

4. First Amendment Claims

In any event, plaintiff's First Amendment claims fail because the alleged conduct of Rice, Schwartz and the County has not deprived plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. To state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

11

"Criminal prosecutions are within the exclusive province of the public prosecutor who has complete discretion over the decision to initiate, continue or cease prosecution." Yashaahla v. M.H.A.N.Y, No. 05-CV-4963, 2006 WL 845586, at *1 (E.D.N.Y. Mar. 29, 2006) (citations omitted). A private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings against another individual. See Leeke v. Timmerman, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981); Linda R.S. v. Richard D., 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); Ostrowski v. Mehltretter, 20 Fed. Appx. 87 (2d Cir. 2001). This considered, it is clear that Rice's, Schwartz's and the County's alleged actions (or inactions) in no way infringed upon any of plaintiff's First Amendment rights. See Price v. Hasly, No. 04-CV-90S, 2004 WL 1305744, at *2 (W.D.N.Y. June 8, 2004); Lis v. Leahy, No. 90-CV-834E, 1991 WL 99060, at *1 (W.D.N.Y. June 3, 1991). Therefore, plaintiff cannot maintain a Section 1983 action against any of the defendants with respect to his First Amendment claims. Accordingly, plaintiff's First Amendment claims are dismissed in their entirety.

5. Equal Protection Claims

Likewise, plaintiff has not stated a viable equal protection claim. To establish an equal protection violation, a plaintiff must show purposeful discrimination by the defendants directed at an identifiable or suspect class. See, Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Although an equal protection violation may be based on a "class of one, where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," see, Kramer v. City of New York, No. 04 Civ. 106, 2004 WL 2429811, at *5 (S.D.N.Y. Nov. 1, 2004)(citing Village of Willowbrook

v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 [2000]), plaintiff has failed to allege any such unequal treatment. Plaintiff's failure to allege that he was treated differently from similarly situated individuals is fatal to his equal protection claim. See, Jackson v. Mann, 196 F.3d 316, 321 (2d Cir. 1999); see also Caracciola v. City of New York, No. 95 Civ. 3896, 1999 WL 144481, at * 6 (S.D.N.Y. Mar. 17, 1999)(holding that plaintiffs' equal protection claims were frivolous where they failed to allege that they were members of a protected group, and they failed to relate specific instances where other persons similarly situated were treated differently or where they were singled out for unlawful treatment). Accordingly, plaintiff's equal protection claims are dismissed in their entirety.

III. Conclusion

For the reasons stated herein, the County defendants' motion is granted and the complaint is dismissed in its entirety.

SO ORDERED

/s/
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 8, 2008
Central Islip, N.Y.

Copies to:

Patrick DeJean, *pro se*
07A2933
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5498

Nassau County Attorney's Office
1 West Street
Mineola, New York 11501
Attn:   Sondra M. Mendelson, ADA

New York State Attorney General's Office
200 Old Country Road, Suite 460
Mineola, New York 11501
Attn:   Toni E. Logue, A.A.G.